UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH KELLEY
TRENTALANGE,

        Plaintiff,

v.                                                  Case No. 8:07-cv-1945-T-24 MAP

OCCULOGIX, INC.,

        Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion to Dismiss. (Doc. No. 5). Plaintiff opposes the motion. (Doc. No. 8).

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right

to relief above the speculative level." Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Plaintiff, a former shareholder of Defendant Occulogix, Inc., filed the instant lawsuit due to Defendant's failure to give her notice of an upcoming initial public offering ("IPO") while she owned Defendant's stock.  Specifically, Plaintiff alleges that in 2004, Defendant changed its name from Vascular Sciences Corporation ("VSC") to Occulogix, Inc. and became a publically traded corporation through an IPO.  She further alleges that Defendant voluntarily undertook a duty to provide all of its existing shareholders with a shareholder information package that informed them of the IPO and their opportunity to sell their stock at the IPO if they responded by a certain date.  Plaintiff did not receive a shareholder package, and she was not aware of Defendant's name change, the IPO, or her ability to sell her stock at the IPO until early 2005.

On February 15, 2005, Plaintiff requested that she be issued Occulogix, Inc. shares corresponding to her shares in VSC.  Plaintiff was not issued Occulogix, Inc. shares until March 8, 2005.

As a result of the foregoing, Plaintiff filed suit against Defendant, asserting two counts. In Count I, Plaintiff asserts a claim for negligence based on Defendant breaching the duty that it voluntarily undertook to notify all existing shareholders of the IPO and their opportunity to sell their stock at the IPO and/or breached its duty to treat all shareholders equally.  In Count II,

Plaintiff asserts a claim for conversion based on Defendant's failure to notify her of the IPO.

**III. Motion to Dismiss**

In response to the complaint, Defendant filed the instant motion to dismiss both counts. Accordingly, the Court will analyze each count.

**A. Negligence**

Plaintiff's negligence claim is based on the allegation that Defendant breached the duty that it voluntarily undertook to notify all existing shareholders of the IPO and their opportunity to sell their stock at the IPO and/or breached its duty to treat all shareholders equally by sending all shareholders the shareholder package. Defendant moves to dismiss this claim, arguing that it cannot be held liable for negligently performing a duty that was voluntarily undertaken, since it never began performance of the duty.[1] Thus, Defendant argues that since it did not attempt to notify Plaintiff of the IPO, it did not undertake the duty to inform her, and as such, it could not have breached a duty to her.

In support of its argument, Defendant cites Gunlock v. Gill Hotels Co., Inc., 622 So. 2d 163 (4th DCA 1993).[2] In Gunlock, a hotel patron was crossing a highway between two of the

---

[1]Defendant also argues that it did not have an affirmative legal duty to notify Plaintiff of the IPO and her ability to sell her stock pursuant to Delaware Corporations Law (Defendant is a Delaware corporation) or Defendant's certificate of incorporation. Plaintiff responds that she is not alleging that Defendant had a statutory or contractual duty to notify her. (Doc. No. 8, p.1). Rather, Plaintiff's negligence claim is based on a duty that Defendant allegedly voluntarily assumed.

Defendant also argues that Plaintiff had knowledge of the IPO pursuant to public documents filed with the Securities and Exchange Commission, and as such, Defendant did not owe her a duty to notify her specifically. However, Defendant has not cited any case law to support this argument. As such, Defendant may raise this argument again in a motion for summary judgment with citations to legal authority.

[2]The parties have not thoroughly briefed the choice of law issue in this case. Therefore, before filing any further substantive motions in this case, the parties must stipulate as to what

hotel's buildings after leaving a bar located in one of the hotel's buildings. See id. at 163. The patron was intoxicated when he left the bar, and the hotel had an internal and customary policy to escort intoxicated hotel guests across the highway to their rooms. See id. at 164. As the patron was attempting to cross the highway, he was struck and killed by a car that Gunlock was driving. See id.

Gunlock filed a third-party complaint against the hotel, alleging that the hotel was negligent by breaching its voluntary duty to escort the patron across the highway. See id. The trial court dismissed this claim, and the appellate court affirmed, stating:

> We do not agree with [Gunlock's] . . . contention that the[] allegations are sufficient to state a cause of action based on breach of a gratuitous assumption of duty. The law does not recognize a cause of action for breach of a gratuitous assumption of duty where performance of the assumed duty has not commenced. Because [Gunlock] fail[s] to allege that [the hotel] began acting in accordance with its escort policy, we find that [Gunlock's] allegations are insufficient to state a cause of action for breach of a gratuitous assumption of duty.

Id.

This Court finds that Gunlock is distinguishable from the instant case. In Gunlock, it was alleged that the hotel escorted patrons in the past, and as a result, the hotel assumed a duty to escort patrons in the future. The court rejected this argument, because the hotel did not attempt to escort the patron-plaintiff, and as such, the hotel could not have negligently escorted him. However, in the instant case, Plaintiff alleges that Defendant undertook a duty to notify *all* existing shareholders of the IPO, and as such, Defendant began performing its voluntary duty to notify all shareholders, which included Plaintiff, when it sent out the shareholder packages. Since Plaintiff did not receive a shareholder package, she contends that Defendant negligently

---

state's law applies to Plaintiff's claims, or they must adequately brief the choice of law issue.

performed the duty to notify all shareholders.

Accordingly, the Court finds that dismissal of Plaintiff's negligence claim based on <u>Gunlock</u> is not warranted. Therefore, Defendant's motion to dismiss Plaintiff's negligence claim is denied.

### B.  Conversion

In Count II, Plaintiff asserts a claim for conversion based on Defendant's failure to notify her of the IPO. "Conversion is defined as 'an act of dominion wrongfully asserted over, and inconsistent with, another's possessory rights in personal property.'" <u>Joseph v. Chanin</u>, 940 So. 2d 483, 486 (Fla. 4th DCA 2006)(citations omitted).

Defendant argues that this claim must be dismissed, because Defendant did not deprive Plaintiff of her property. Plaintiff does not contend that Defendant deprived her of her stock; rather, she contends that the property that she was deprived of was the ability to sell her stock at a high price in the IPO. (Doc. No. 2, ¶ 15; Doc. No. 8, p. 5). Defendant argues that Plaintiff was deprived of knowledge, not property.

In support of her conversion claim, Plaintiff cites <u>Tansey v. Trade Show News Networks, Inc.</u>, 2001 WL 1526306 (Del. Ch. Nov. 27, 2001). Plaintiff's reliance on <u>Tansey</u>, however, is misplaced.

In <u>Tansey</u>, the plaintiff asserted a conversion claim, alleging that the defendants (TSNN and Tarsus) unlawfully converted his TSNN stock when they proceeded with an invalid merger of the companies. <u>See id.</u> *1. As a result of the invalid merger, the plaintiff was told that his TSNN stock would be replaced with the Tarsus stock. <u>See id.</u> at *3.

The plaintiff argued that " the defendants exercised unlawful dominion over his TSNN

shares by purporting to take them from him in the invalid First Merger in exchange for the consideration contemplated in the First Merger Agreement." Id. at *6. Thus, the plaintiff argued that because the defendants had no legal authority to consummate the merger, the defendants exercised dominion and control over his property. See id. The court agreed and reasoned that since a merger results in the exercise of control and dominion over a stockholder's shares because they become, by operation of law, shares of the surviving company or are extinguished in exchange for other merger consideration, the invalid merger resulted in an unlawful conversion of the plaintiff's stock. See id.

Tansey is distinguishable from the instant case. In Tansey, the plaintiff's stock was the property that was unlawfully converted, and the conversion occurred due to the invalid merger. In the instant case, Plaintiff contends that the property that was unlawfully converted was the ability to sell her stock at a high price in the IPO due to Defendant's failure to give her specific notice of the IPO. Plaintiff has not cited any case law that supports her theory that such an ability is considered property that can be converted. See, e.g., U.S. v. Cancer Treatment Centers of America, 350 F. Supp.2d 765, 774 (N.D. Ill. 2004)(finding that the right or opportunity to respond to a subpoena could not be unlawfully converted, because conversion applies to property, not rights that flow from property). Since Plaintiff does not argue that her stock was the property that was unlawfully converted, her conversion claim must be dismissed.

## IV. Conclusion

As explained above, the Court is dismissing Plaintiff's conversion claim and denying Defendant's motion as to the negligence claim. Plaintiff seeks leave to amend her complaint in her response to the motion to dismiss. The Court denies the motion without prejudice, but

Plaintiff can file a motion seeking leave to amend her complaint.

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion to Dismiss (Doc. No. 5) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** as to Plaintiff's conversion claim; otherwise, the motion is **DENIED**.

(2) If Plaintiff wishes to amend her complaint, she is directed to file a motion to amend by January 4, 2008.

**DONE AND ORDERED** at Tampa, Florida, this 17th day of December, 2007.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record